# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

UNITED STATES,

 Plaintiff,

 v.

SETH HERRERA,

 Defendant.

Case No. 3:24-cr-00091-SLG-KFR

## SEALED ORDER ON MOTION TO SUPPRESS

Before the Court at Docket 54 is Defendant Seth Herrera's Motion to Suppress.[1] The Government responded in opposition at Docket 70.[2] Defendant filed a reply at Docket 80-1.[3] Oral argument on the motion was held on October 15, 2025.[4]

## BACKGROUND

### I. Investigation

The charges against Defendant in this case stem from an undercover operation by Homeland Security Investigations ("HSI").[5] Undercover HSI agent Nathan

---

[1] A redacted public copy is at Docket 64.

[2] The filing at Docket 70 is a redacted version of the Government's response. In this sealed order, the Court will cite the unredacted, sealed Government response at Docket 72-1.

[3] This filing is sealed.

[4] Docket 93.

[5] Docket 73-1 (SEALED) at ¶¶ 1, 6-16 (Elizter Aff.). Defendant also filed the Elizter Affidavit as an exhibit, but for consistency, the Court cites to the affidavit at Docket 73-1.

Elizter had been monitoring Application A, which is "a free Internet-based messaging and social-media application for smartphones, tablets, and computers."[6] On Application A, individuals can create and participate in "groups," which allow users to exchange messages and files, including photos and videos.[7]



Agent Elizter discovered groups on Application A dedicated to the trafficking of CSAM, including Group X, ███████████████████████████████.[12] Group

---

[6] Docket 72-1 (SEALED) at 2 (citing Docket 73-1 (SEALED) at ¶¶ 7, 12 (Elizter Aff.)).

[7] Docket 72-1 (SEALED) at 2 (citing Docket 73-1 (SEALED) at ¶¶ 7-8 (Elizter Aff.)).

[8] Docket 72-1 (SEALED) at 3 (citing Docket 73-1 (SEALED) at ¶ 15 (Elizter Aff.)).

[9] Docket 72-1 (SEALED) at 3 (citing Docket 73-1 (SEALED) at ¶ 15 (Elizter Aff.)).

[10] Docket 72-1 (SEALED) at 3 (citing Docket 73-1 (SEALED) at ¶ 18 (Elizter Aff.)).

[11] Docket 72-1 (SEALED) at 3-4 (citing Docket 73-1 (SEALED) at ¶¶ 16, 18 (Elizter Aff.)).

[12] Docket 72-1 (SEALED) at 2-3 (citing Docket 73-1 (SEALED) at ¶¶ 7-8 (Elizter Aff.)); Docket 73-1 (SEALED) at ¶¶ 12, 19 (Elizter Aff.).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 2 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 2 of 39

X was named ███████████ and the title and description referenced terminology specific to CSAM.[13] █████████████████

██████████████████████████████████

██████████████████████████████████

███████████ █████████████████████████

███████████████████████████████████

███████████████████████ based on the CSAM that was openly visible in Group X at the time, it was "extremely unlikely that a user in the Group would not know that the Group was dedicated to child pornography."[15]

███████████████████████████████████

███████████████████████████████████

███████████ █████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████[17]

---

[13] Docket 72-1 (SEALED) at 4 (citing Docket 73-1 (SEALED) at ¶ 19 & n.2 (Elizter Aff.)).

[14] Docket 72-1 (SEALED) at 3 (citing Docket 73-1 (SEALED) at ¶ 13 (Elizter Aff.)).

[15] Docket 72-1 (SEALED) at 5 (citing Docket 73-1 (SEALED) at ¶¶ 19, 21 (Elizter Aff.)).

[16] Docket 72-1 (SEALED) at 4 (citing Docket 73-1 (SEALED) at ¶¶ 19, 22 (Elizter Aff.)).

[17] Docket 73-1 (SEALED) at ¶ 22 (Elizter Aff.).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 3 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 3 of 39



on February 19, 2024, at approximately 9:02 UTC, "a user with the IP address 69.178.54.187, Port 54632 connected to ██████████████████████████████████████████████████████████[9]██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

HSI learned that the IP address identified above was registered to GCI Communications; HSI issued a subpoena to GCI to identify the customer to whom the IP address was assigned at the time the IP address was used to visit ████ ██████. In response to the subpoena, GCI identified the customer as Seth Herrera with a service and billing address of ████████████████████ at Fort

---

[18] Docket 72-1 (SEALED) at 5 (citing Docket 73-1 (SEALED) at ¶ 23 (Elizter Aff.)).

[19] Docket 73-1 (SEALED) at ¶ 23 (Elizter Aff.); Docket 72-1 (SEALED) at 5. █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[20] Docket 73-1 (SEALED) at ¶ 17 (Elizter Aff.).

[21] Docket 54 (SEALED) at 4.

[22] Docket 72-1 (SEALED) at 5 (citing Docket 73-1 (SEALED) at ¶¶ 24-25 (Elizter Aff.)).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 4 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 4 of 39

Richardson, Alaska.[23]  On May 7, 2024, the Army Criminal Investigations Division ("CID") informed HSI that Defendant lived at that address with his wife and then-6-year-old daughter.[24]

On May 8, 2024, CID investigators drove past Defendant's apartment complex to ascertain whether there were other wireless networks in the area.[25]  In Agent Elizter's affidavit, he stated that "Army CID noted that there were multiple wireless networks in the area, but all of them were secured."  Therefore, Agent Elizter concluded "that the wireless router at [Defendant's apartment was] likely generating a secured wireless network."[26]  However, the CID investigation report stated that "[s]everal networks were identified; however, all were secured requiring a password with exception of the Wi-Fi enabled network identified as 'Family Room TV.'"[27]

## II.     Search Warrant

On May 9, 2024, Agent Elizter sought a search warrant to search Defendant's apartment and Defendant's person.  In Agent Elizter's affidavit, filed

---

[23] Docket 72-1 (SEALED) at 5 (citing Docket 73-1 (SEALED) at ¶ 26 (Elizter Aff.)).

[24] Docket 72-1 (SEALED) at 5 (citing Docket 73-1 (SEALED) at ¶ 27 (Elizter Aff.)); Docket 54 (SEALED) at 5; Docket 73-1 (SEALED) at ¶¶ 27-28 (Elizter Aff.).

[25] Docket 72-1 (SEALED) at 5-6 (citing Docket 73-1 (SEALED) at ¶ 28 (Elizter Aff.)).

[26] Docket 73-1 (SEALED) at ¶ 28 (Elizter Aff.).

[27] Docket 65-3 (SEALED) at 1; *see* Docket 65-3 (SEALED) at 2 (showing that of the 14 wireless networks identified, only one was unsecured with a password).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 5 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 5 of 39

in support of the application for a search warrant, he averred that, based on his investigation, there was

> probable cause to believe that an individual who is residing at the SUBJECT PREMISES has, among other things, been present in a group on Application A that is dedicated to the sharing, exchange, download, and viewing of child pornography, and in which child pornography was displayed and made available for download. There is further probable cause to believe that this individual clicked on a URL link in such a group with the intent to download and/or view additional child pornography. Accordingly, there is probable cause to believe that an individual at the SUBJECT PREMISES violated or attempted to violate the federal criminal statutes set forth above, and that evidence, instrumentalities, and fruits of those offenses will be found at the SUBJECT PREMISES.[28]

Agent Elizter's affidavit included "nine paragraphs describing 'Characteristics Common to Individuals Who Have a Sexualized Interest in Children or Who Produce, Receive, and/or Possess Child Pornography.'"[29] In his affidavit, Agent Elizter concluded that an individual residing at Defendant's apartment met these characteristics because, "on February 19, 2024, a user of the IP address 69.178.54.187 clicked on a link ██████████████

---

[28] Docket 73-1 (SEALED) at ¶ 6 (Elizter Aff.).

[29] Docket 54 (SEALED) at 7 (quoting Docket 73-1 (SEALED) at ¶¶ 30-31 (Elizter Aff.)).

[30] Docket 54 (SEALED) at 7 (quoting Docket 73-1 (SEALED) at ¶ 31 (Elizter Aff.)).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 6 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 6 of 39

Upon review of the warrant application and Agent Elizter's affidavit, a magistrate judge issued a search warrant authorizing a search of Defendant's residence and person, shown in Attachments A-1 and A-2 to the warrant affidavit, and the seizure of a list of items in Attachment B to the warrant affidavit.[31] The parties disagree as to whether the search warrant authorized a search of the contents of the electronic devices located in Defendant's residence and on his person.

Attachment B contained a preface that the items to be seized "constitute evidence . . . which is or has been used as the means of committing a criminal offense, namely violations of 18 U.S.C. §§ 2252 and 2252A."[32]

Attachment B identified six categories of evidence to be seized. First, the warrant authorized the seizure of "Child pornography, as defined in 18 U.S.C. § 2256(8)(A) and (C), and child erotica."[33] Second, it authorized the seizure of "[a]ny records or information relating to the advertisement, distribution, transportation, receipt, access, possession, creation, production, storage, transmission, or editing of any visual depictions listed in the previous items, as well as any information relating to the identity of any person involved in such actions or any person

---

[31] Docket 73-1 (SEALED) at 1-10 (Search Warrant and Attachments).

[32] Docket 73-1 (SEALED) at 6 (Attachment B).

[33] Docket 73-1 (SEALED) at 6 (Attachment B).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 7 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 7 of 39

depicted in such visual depictions."[34] Third, the warrant, through Attachment B, authorized the seizure of "[c]omputers or storage media used as a means to commit the violations described above."[35]

Fourth, as to "any computer or storage medium whose seizure is otherwise authorized by this warrant," paragraph four of Attachment B authorized the seizure of numerous kinds of evidence, set forth in subparts.[36] The subparts authorized the seizure of:

> a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;
>
> b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;
>
> c. evidence of the lack of such malicious software;
>
> d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crime(s) under investigation and to the computer user;
>
> e. evidence indicating the computer user's knowledge and/or intent as it relates to the crime(s) under investigation;

---

[34] Docket 73-1 (SEALED) at 6 (Attachment B).

[35] Docket 73-1 (SEALED) at 6 (Attachment B).

[36] Docket 73-1 (SEALED) at 7-8 (Attachment B).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 8 of 39

f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g. evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

h. evidence of the times the COMPUTER was used;

i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k. records of or information about Internet Protocol addresses used by the COMPUTER;

l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

m. contextual information necessary to understand the evidence described in this attachment.[37]

Fifth, Attachment B authorized the seizure of "Routers, modems, and network equipment used to connect computers to the Internet." Lastly, Attachment B authorized the seizure of "Records, information, and items relating to violations of the statutes described above" regarding "the occupancy or ownership of the SUBJECT PREMISES . . . including utility and telephone bills, mail envelopes, or

---

[37] Docket 73-1 (SEALED) at 6-8 (Attachment B). Defendant maintains that Attachment B "did not explicitly authorize the search of any computers, though, in his affidavit in support of the warrant application, SA Elizter requested permission to search any computers recovered from Herrera's residence." Docket 54 (SEALED) at 8 (citing Docket 73-1 (SEALED) at ¶ 41 (Elizter Aff.)).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 9 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 9 of 39

addressed correspondence; . . . the ownership or use of computer equipment found in the above residence, including sales receipts, bills for Internet access, and handwritten notes; . . . the identity or location of the persons suspected of violating the statutes described above; . . . the use of Application A, as described in the Affidavit"; and records and information relating to the "sexual exploitation or abuse of children, including correspondence and communications between users of child pornography and exploitation websites or online chat groups."[38]

Attachment B also authorized law enforcement to compel any individual at Defendant's apartment and reasonably believed by law enforcement to be a user of any computer or storage device to provide biometric features, such as a finger or face, to unlock these devices.[39]

### III.    Execution of the Search Warrant and Defendant's Interview

The search warrant was executed by Alaska State Troopers, CID, and HSI on May 14, 2024, at 7:20 a.m.[40] According to the investigative activity report, Agent Elizter entered the residence and notified Defendant of the search warrant. Defendant was then "escorted from the premises by [another agent] and SA Elizter. [Defendant] was transported by the WEER Resident Unit office and placed in an interview room" at the Army CID office.[41] The CID office was approximately

---

[38] Docket 73-1 (SEALED) at 8-9 (Attachment B).

[39] Docket 73-1 (SEALED) at 9-10 (Attachment B).

[40] Docket 65-6 (SEALED).

[41] Docket 65-6 (SEALED); *see* Docket 65-4 (SEALED) ("Herrera placed the dogs in their kennels

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 10 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 10 of 39

one mile from Defendant's residence.[42] At no point did agents handcuff Defendant.[43]

Defendant was seated in the interview room with two agents between him and the door.[44] Defendant was read his *Miranda* rights at the beginning of the interview, and was reminded of his *Miranda* rights when questioning resumed a second and third time.[45] The agents told Defendant that he was not under arrest and the door to the interview room was unlocked.[46] Agents also told Defendant that if he wished to use the restroom, that could be "arrange[d]" and when Defendant inquired about his job, the agents said "We will take care of that."[47] About three hours into the interview, officers used Defendant's biometrics to open his phone.[48] After five hours of intermittent questioning, and seven hours of being detained in the interview room, Defendant was released to his supervising Army officer.[49] Law enforcement ultimately seized one desktop computer, four laptop

---

before being escorted to the CID office for an interview.").

[42] Docket 72-1 (SEALED) at 8.

[43] Docket 72-1 (SEALED) at 8.

[44] Docket 54 (SEALED) at 9.

[45] Docket 72-1 (SEALED) at 8 n.3 (citing Docket 54-2 (video of interview conventionally filed with the Court); *see* Docket 65-2 (SEALED) at 1, 21, 24 (transcript of interview).

[46] Docket 65-2 (SEALED) at 15-16.

[47] Docket 65-2 (SEALED) at 15-16.

[48] Docket 65-2 (SEALED) at 25.

[49] Docket 65-2 (SEALED) at 47.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 11 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 11 of 39

computers, eight cellphones, one tablet, one smart watch, and two external hard drives from Defendant's residence.[50]  A forensic search of three of the cellphones revealed CSAM dating back to March 2021.[51]

On August 21, 2024, a grand jury returned an indictment charging Defendant with transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1), (b)(1); receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2).[52]

Defendant moves to suppress the evidence seized pursuant to the search warrant and the statements he gave during the interview at the CID office on various grounds.  First, as to the search warrant, Defendant contends that the warrant was invalid for several reasons: Agent Elizter "recklessly misrepresented material information in the affidavit"; the warrant was not supported by probable cause that someone in Defendant's residence accessed Group X; and the information in the affidavit was stale.[53]  Defendant also asserts that the search of the computers and media storage devices exceeded the scope of the search warrant, and that the warrant was insufficiently particular and impermissibly

---

[50] Docket 65-7 (SEALED).

[51] Docket 72-1 (SEALED) at 13-14.

[52] Docket 2 at 1-4.

[53] Docket 54 (SEALED) at 20-34.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 12 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 12 of 39

overbroad.[54]    Defendant also maintains that the good faith exception to the exclusionary rule should not apply to the items seized.[55]    Lastly, Defendant contends that he was unjustifiably arrested when he was taken to the CID office for questioning and that his arrest was not supported by probable cause.[56]    The Court addresses each argument in turn.

## LEGAL STANDARDS

"The touchstone of the Fourth Amendment is reasonableness.  The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable."[57]    Where a search warrant is required to comply with the Fourth Amendment, the warrant "must be supported by an affidavit establishing probable cause."[58]  Probable cause to issue a search warrant exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place based on the totality of circumstances."[59]  "Neither certainty nor a preponderance of the evidence is required."[60]    In determining

---

[54] Docket 54 (SEALED) at 37-44.

[55] Docket 54 (SEALED) at 34-37.

[56] Docket 54 (SEALED) at 44-47.

[57] *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citations omitted).

[58] *Cameron v. Craig*, 713 F.3d 1012, 1018 (9th Cir. 2013) (internal quotation marks omitted).

[59] *United States v. Kvashuk*, 29 F.4th 1077, 1085 (9th Cir. 2022) (internal quotation marks omitted) (quoting *United States v. King*, 985 F.3d 702, 707 (9th Cir. 2021)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (explaining that probable cause decision is based on "all the circumstances set forth in the affidavit").

[60] *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (internal citations and quotation

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 13 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 13 of 39

whether probable cause exists, the issuing magistrate judge "may rely on the training and experience of affiant police officers."[61] "In reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit."[62] And yet, "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant."[63] The defendant has the burden of demonstrating that there is a lack of substantial evidence supporting probable cause for a "regularly issued" search warrant.[64]

To determine "whether and when an investigatory stop becomes an arrest," courts evaluate "[t]he totality of the circumstances."[65] "In looking at the totality of the circumstances, [courts] examine two main components of the detention. First is 'the intrusiveness of the stop, i.e., the aggressiveness of the police methods and

---

marks omitted).

[61] *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002); *see also United States v. Fannin*, 817 F.2d 1379, 1382 (9th Cir. 1987) (holding that an issuing magistrate judge may rely on conclusions of experienced officers regarding where evidence of a crime is likely to be found).

[62] *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985), *amended*, 769 F.2d 1410 (9th Cir. 1985).

[63] *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam); *see also United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (noting that reviewing courts "are not in a position to flyspeck the affidavit through de novo review" and that "the magistrate judge's determination 'should be paid great deference'" (quoting *Gates*, 462 U.S. at 236)).

[64] *See United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005); *Chin Kay v. United States*, 311 F.2d 317, 321 (9th Cir. 1962).

[65] *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 14 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 14 of 39

how much the plaintiff's liberty was restricted.'"[66]  Courts "'review the situation from the perspective of the person seized,' assessing whether 'a reasonable innocent person in these circumstances would . . . have felt free to leave after brief questioning.'"[67]  Second, courts evaluate "'the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.'"[68]

The exclusionary rule bars the government from using at trial evidence that was obtained through a violation of the Fourth Amendment.[69]  Evidence derived from a Fourth Amendment violation—including "the 'primary evidence obtained as a direct result of an illegal search or seizure' and . . . 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree'"[70]—is ordinarily deemed tainted and must be excluded "subject to a few recognized exceptions."[71]  The government has the burden of showing that an exception to the exclusionary rule applies.[72]

---

[66] *Id.* (quoting *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996)).

[67] *Id.* (quoting *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295-96 (9th Cir. 1988)).

[68] *Id.* (quoting *Lambert*, 98 F.3d at 1185).

[69] *See Wong Sun v. United States*, 371 U.S. 471, 484–85 (1963).

[70] *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

[71] *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir. 2017) (citing *Wong Sun*, 371 U.S. at 484), *amended*, 870 F.3d 963 (9th Cir. 2017).

[72] *Id.*

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 15 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 15 of 39

# DISCUSSION

## I.     Search Warrant

### A.     *Material Misrepresentation*

Defendant first maintains that the search warrant is invalid because Agent Elizter made a material misrepresentation in his affidavit—specifically, that there were no unsecured Wi-Fi networks observed around Defendant's apartment.[73]

Defendant requests an evidentiary hearing on the misrepresentation.

> A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the allegedly false information.[74]

The Court finds that Defendant has not made the requisite substantial preliminary showing that, after omitting the statement regarding the absence of unsecured networks, the affidavit cannot support a finding of probable cause. Agent Elizter's affidavit set out that an IP address registered to Defendant was used to ███████████████████████████████████████████ ████████████████████████████████ That one of the 14 Wi-Fi networks in the vicinity of Defendant's apartment was unsecured does not undermine the

---

[73] Docket 54 (SEALED) at 20-23 ("[O]ne Wi-Fi network in the vicinity of Herrera's apartment was unsecured and open to the public for use. As far as investigators knew, this network could have belonged to Mr. Herrera. This information made it less likely that evidence would be found in Mr. Herrera's residence. This misrepresentation was material and reckless.").

[74] *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 16 of 39

Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 16 of 39

magistrate judge's finding that probable cause existed that evidence of child pornography could be found at Defendant's apartment. For one thing, the IP address could have been used with an ethernet cable to access ████████, making the presence of secured or unsecured Wi-Fi networks entirely immaterial. Further, even assuming the user who accessed the internet through Defendant's IP address was using a wireless network, only one of 14 Wi-Fi networks that the CID officers observed was not secured with a password, making it far more likely than not that Defendant's wireless network would have been one of the secured networks. Agent Elizter's affidavit also averred that "individuals who have set up either a secured or unsecured wireless network in their residence are often among the primary users of that wireless network," making it likely that Defendant or someone in his household was the user of the IP address identified by GCI as registered to Defendant.[75] In sum, Agent Elizter's statement in the affidavit regarding the lack of any unsecured network in the vicinity of Defendant's residence, even if erroneous, does not undermine the magistrate judge's finding of probable cause. The Court finds that no evidentiary hearing is warranted, and the evidence seized pursuant to the search warrant will not be suppressed on this basis.

> B. Probable Cause

---

[75] Docket 73-1 (SEALED) at ¶ 36 (Elizter Aff.).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 17 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 17 of 39

Defendant also contends that Agent Elizter's affidavit did not support probable cause because ███████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████[76] Further, the "affidavit describes an ongoing HSI operation where ██████████ █████████████████████████████████████████████████████████ ███████████████████████████ ████████████████████████████ ███████████████████████████████████████████████████ ████████████

Defendant's arguments are unpersuasive. First, Agent Elizter testified that



The affidavit also describes that the link was posted in Group X, which had a title and description suggesting that the group was intended for sharing CSAM. As Agent Elizter testified, ████████████████████████████████ ████████████████████████████████████

---

[76] Docket 54 (SEALED) at 24.

[77] Docket 54 (SEALED) at 24.

[78] Docket 73-1 (SEALED) at ¶ 22 (Elizter Aff.).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 18 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 18 of 39



the Court agrees with the Government

[80] Further,

leading to a reasonable inference that the user who clicked on the link—that was definitively posted in Group X—had also viewed at least some of those images and was present in Group X for the purpose of viewing child pornography. Considering that to find probable cause, "[n]either certainty nor a preponderance of the evidence is required," the Court finds that the affidavit established a "fair probability that contraband or evidence of a crime will be found" at Defendant's residence based on the totality of circumstances.[81]  As such, the evidence seized pursuant to the search warrant will not be suppressed on this basis.

### C. Stale Information

Defendant contends that the affidavit did not establish that Defendant fit a "collector profile" and therefore probable cause had "dissipated within the three

---

[79] Docket 73-1 (SEALED) at ¶ 9 (Elizter Aff.).

[80] Docket 72-1 (SEALED) at 19; *see United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) ("[A] probable cause determination may be based in part on reasonable inferences.").

[81] *Kelley*, 482 F.3d at 1050; *Kvashuk*, 29 F.4th at 1085.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 19 of 39

months between when the link was accessed and the search warrant was executed at Mr. Herrera's residence."[82]

A warrant must be based on facts "'so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'"[83] But "the mere lapse of substantial amounts of time is not controlling in a question of staleness."[84] Courts "evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought."[85] "The information offered in support of the application for a search warrant is not stale if 'there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.'"[86]

Defendant's arguments suggest that in order to avoid staleness in this case, the warrant affidavit had to establish that Defendant fit a "collector" profile.[87] Defendant relies on *United States v. Weber*.[88] *Weber* does not discuss whether the information in the search warrant affidavit was stale; rather, the Ninth Circuit in

---

[82] Docket 54 (SEALED) at 26-34.

[83] *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (quoting *Durham v. United States*, 403 F.2d 190, 193 (9th Cir. 1968)).

[84] *Id.* (quoting *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988)).

[85] *Id.* (quoting *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993)).

[86] *Id.* at 745-46 (quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984)).

[87] Docket 54 (SEALED) at 26-34.

[88] Docket 54 (SEALED) at 28-29, 33-34 (citing *United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1990)). The Court declines to address the out-of-Circuit case also relied on by Defendant, *United States v. Raymonda*, 780 F.3d 105, 117 (2d Cir. 2015).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 20 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 20 of 39

that case evaluated whether the affidavit established probable cause to search Weber's residence for "[b]ooks, magazines, pamphlets, photographs, negatives, films, video tapes and undeveloped films depicting" child pornography.[89]  All that was averred in the affidavit in support of the warrant was that

> two years previously, Weber had been sent advertising material that was described by the customs agent who intercepted it as "apparently" child pornography; (2) that although Weber was advised that Customs had the material, he never claimed it; (3) that there was no proof that Weber requested the advertising material; and (4) that Weber answered a government-generated advertisement for child pornography and ordered materials that were to be delivered by the government just before the execution of the warrant.[90]

The Ninth Circuit held that these facts in the affidavit were insufficient to support a finding of probable cause to search Weber's residence for child pornography apart from the four photographs to be delivered. Further, the Circuit held that the lack of probable cause was not saved by the affidavit's "boilerplate recitations" regarding "pedophiles," "child molesters," and "child pornography collectors" because "there was not a whit of evidence in the affidavit" indicating that Weber fell into any of those classes.[91]  The Ninth Circuit in *Weber* did not hold that a general search of a residence for child pornography was only permitted when the suspect was a collector of child pornography, only that boilerplate

---

[89] *Weber*, 923 F.2d at 1340, 1344.  Weber did not challenge the search warrant's authorization to search for four sets of photographs depicting child pornography that were going to be delivered to Weber's residence as part of a controlled delivery by the government.  *Id.* at 1340, 1342 & n.2.

[90] *Id.* at 1344.

[91] *Id.* at 1345.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 21 of 39

Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 21 of 39

language describing such a profile in an affidavit does not establish probable cause where it is otherwise lacking. Further, the Court agrees with the Government that *Weber* is distinguishable from the facts in this case, as "*Weber* involved a mail package with printed photographs, this case involves electronic images stored on a computer, which is capable of retaining material for months or even years after it has been viewed."[92] And in *Weber*, there was no evidence that the defendant had accessed or stored any additional media containing CSAM apart from his ordering of the photographs that were to be delivered in the controlled delivery.

Here, Agent Elizter's affidavit described that computers can store evidence that the user accessed CSAM for long periods of time even after attempts to delete such information, and that Group X contained thousands of images and videos of CSAM on ██████████ As such, in contrast to *Weber*, here there was a "'fair probability' that the items searched for will be found" at Defendant's residence.[93]

The question before the Court then is whether "in light of the particular facts of the case and the nature of the criminal activity and property sought,"[94] "'there is sufficient basis to believe, based on a continuing pattern or other good reasons,

---

[92] Docket 72-1 (SEALED) at 27.

[93] *Weber*, 923 F.2d at 1345 (quoting *United States v. Rabe*, 848 F.2d 994, 997 (9th Cir. 1988)).

[94] *Lacy*, 119 F.3d at 745.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 22 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 22 of 39

that the items to be seized are still on the premises.'"[95]  The Court agrees with the Government that, "[t]hanks to the long memory of computers," "the contraband nature of child pornography, [and] law enforcement's ability to recover electronic evidence from devices, . . . evidence of online child-pornography offenses [may] not [be] stale many months, or even several years, after the underlying event that gave rise to it."[96]

Here, Agent Elizter's affidavit explained that ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████  ███████████████████████████ █████████████████ someone using Defendant's IP address clicked on that link. Further, Agent Elizter testified that "a computer user's Internet activities generally leave traces or 'footprints' in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data."[97] And Agent Elizter averred that "[i]ndividuals who have a sexual interest in children or images of children typically retain those materials and child erotica for many years" and that "child pornography images are often maintained for several years and are kept close by, usually at the possessor's residence, inside the possessor's

---

[95] *Id.* at 745-46.

[96] *Gourde*, 440 F.3d at 1071; Docket 72-1 (SEALED) at 22-23.

[97] Docket 73-1 (SEALED) at ¶ 29(h) (Elizter Aff.).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 23 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 23 of 39

vehicle, or, at times, on their person, or in cloud-based online storage, to enable the individual to view the child pornography images, which are valued highly."[98] In light of these facts, the Court finds that the three-month delay between the click and the search warrant does not render the facts in the affidavit stale.[99]  As such, the evidence seized pursuant to the search warrant will not be suppressed on this basis.

### D. Search of Electronic Devices

Defendant next contends that the search of the electronic devices seized from his residence exceeded the scope of the warrant.[100]  "To determine whether the search of a specific location is within the scope of a valid warrant," a court undertakes "an objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search."[101]

Defendant maintains that the search warrant incorporated by reference only Attachments A and B, and not Agent Elizter's affidavit, and Attachments A and B

---

[98] Docket 73-1 (SEALED) at ¶ 30(b)-(c) (Elizter Aff.).

[99] *See Lacy*, 119 F3d at 745-46 (holding that ten-month delay between download of two GIFs depicting CSAM and application for search warrant did not render information in affidavit stale); *United States v. Schesso*, 730 F.3d 1040, 1047 (9th Cir. 2013) (holding that information in affidavit was not stale after 20 months because the affidavit "explained that individuals who possess, distribute, or trade in child pornography rarely, if ever, dispose of sexually explicit images of children because these images are treated as prized possessions" and because there was a "reasonable inference that Schesso fit the profile of a collector").

[100] Docket 54 (SEALED) at 37.

[101] *United States v. Hurd*, 499 F.3d 963, 966 (9th Cir. 2007) (citation omitted).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 24 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 24 of 39

only authorize the seizure of the electronic devices from Defendant's person and apartment, not a search of the devices' contents.[102]  Defendant relies on *United States v. Payton*.[103]  In that case, law enforcement obtained a search warrant to search a home based on probable cause of suspected drug sales.[104]  The search "warrant did not explicitly authorize the search of [the defendant's] computer, and it incorporated [the officer's] affidavit only to support probable cause, not to describe the objects to be searched or searched for."[105] While the warrant in *Payton* authorized a search to find and seize "sales ledgers showing narcotics transactions such as pay/owe sheets" and "financial records of the person(s) in control of the premises," the Ninth Circuit held that, because there was an "absence of any circumstances supporting a reasonable belief that items specified in the warrant would be found on the computer, the search did not meet the Fourth Amendment standard of reasonableness."[106]

This case is quite different from *Payton*.  Attachment B described in detail the items to be seized, which included "[c]omputers or storage media" and, regarding any computers seized pursuant to the warrant, "evidence of who used, owned, or controlled the COMPUTER at the time the things described in this

---

[102] Docket 54 (SEALED) at 38-40; Docket 80-1 (SEALED) at 6-8.

[103] Docket 54 (SEALED) at 37-40 (citing *United States v. Payton*, 573 F.3d 859 (9th Cir. 2009)).

[104] *Payton*, 573 F.3d at 861.

[105] *Id.* at 862.

[106] *Id.* at 863 (alternations omitted).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 25 of 39

warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, browsing history, user profiles, email, email contacts, 'chat,' instant messaging logs, photographs, and correspondence;" "evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER; evidence of the times the COMPUTER was used; [and] passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER."[107] Attachment B also authorized law enforcement to compel any individual at Defendant's apartment and reasonably believed by law enforcement to be a user of any computer or storage device to provide biometric features, such as a finger or face, to unlock said devices.[108] Further, the warrant itself found "probable cause to search and seize the person or property described above, and that such search will reveal: See Attachment B."[109]

An "objective assessment of the circumstances surrounding the issuance of the warrant, the contents of the search warrant, and the circumstances of the search," shows that, unlike in *Payton*, the warrant, in conjunction with Attachment B, expressly authorized the search of the content of the computers and other

---

[107] Docket 73-1 (SEALED) at 6-7 (Attachment B).

[108] Docket 73-1 (SEALED) at 9-10 (Attachment B).

[109] Docket 73-1 (SEALED) at 1 (Search Warrant).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 26 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 26 of 39

electronic devices seized pursuant to the warrant.[110]  Much of the evidence described in Attachment B could only be seized pursuant to a search of the computers and electronic devices.  As in *United States v. Towne*, the search warrant issued here described the elements to be searched as "See Attachment B."[111]  Considering that identical language as here, the Circuit held "[t]here is no question that Attachment B was incorporated by reference in the search warrant."[112]  Therefore, the evidence seized from the electronic devices from Defendant's residence will not be suppressed on this basis.

### E. Particularity and Overbreadth

Defendant also maintains that the search warrant was insufficiently particular and overbroad.[113]  In his view, there was insufficient evidence "in Elizter's affidavit that the individual who accessed the link fit the 'collector' profile"; and Agent Elizter's affidavit described only "that an anonymous individual accessed a link (that originated on Group X) on one occasion and did not download pornography."[114]  As such, Defendant maintains "[t]here was no basis to seize and search every item where child pornography could theoretically be held."[115]

---

[110] *Hurd*, 499 F.3d at 966.

[111] *United States v. Towne*, 997 F.2d 537, 548-49 (9th Cir. 1993).

[112] *Id.*

[113] Docket 54 (SEALED) at 41-44.

[114] Docket 54 (SEALED) at 42.

[115] Docket 54 (SEALED) at 42.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 27 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 27 of 39

"In order for a search to be reasonable, the warrant must be specific. Specificity has two aspects: particularity and breadth."[116] Regarding particularity, to be valid a warrant "must describe the place to be searched or things to be seized with sufficient particularity, taking account of 'the circumstances of the case and the types of items involved.'"[117] "The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized."[118] "Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible."[119] Regarding breadth, the warrant "must be no broader than the probable cause on which it is based."[120] "[H]eightened specificity concerns [are present] in the computer context, given the vast amount of data they can store."[121]

Defendant in part relies on *United States v. Hay* and *United States v. Lacy*, explaining that in each of those cases, the Ninth Circuit upheld a search warrant authorizing the seizure of an entire computer system because agents had no way of knowing where the CSAM that the suspect had downloaded was stored, whether

---

[116] *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856 (9th Cir. 1991).

[117] *Weber*, 923 F.2d at 1342 (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)).

[118] *Spilotro*, 800 F.2d at 963.

[119] *Id.*

[120] *Weber*, 923 F.2d at 1342.

[121] *United States v. Adjani*, 452 F.3d 1140, 1149 (9th Cir. 2006).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 28 of 39

on the computer's hard drive or on computer disks.[122]  Defendant also maintains

that the Ninth Circuit "'do[es] not approve of issuing warrants authorizing blanket

removal of all computer storage media for later examination when there is no

affidavit giving a reasonable explanation, such as that provided in *Hay* and *Lacy,*

as to why a wholesale seizure is necessary.'"[123]

Here, Agent Elizter's affidavit provided a reasonable explanation for the

seizure of all computers and storage devices in Defendant's residence.  The

affidavit explained that computer data is stored on a wide variety of systems and

storage devices, and that searching the devices during a search of the premises

is not always possible due to the technical nature of computer searches, the large

volume of data involved, and the possibility that the user employed tactics to

conceal data within the computer.[124]  Because it was unknown which Internet-

capable device was used to access Group X and click on the link ▮▮▮▮▮▮▮

▮▮▮, the warrant could not further specify which electronic devices were to be

seized. The Court therefore finds that it was reasonable for the Government to ask

for the seizure of all computers and media storage devices, and the resultant

warrant was sufficiently particular.

---

[122] Docket 54 (SEALED) at 41-42 (first citing *United States v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000); and then citing *Lacy*, 119 F.3d at 746).

[123] Docket 54 (SEALED) at 42 (quoting *United States v. Hill*, 459 F.3d 966, 976 (9th Cir. 2006)).

[124] Docket 73-1 (SEALED) at ¶ 35 (Elizter Aff.).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 29 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 29 of 39

Defendant further maintains that "it was entirely possible to perform a narrow search of these devices . . . to determine whether the devices were even used in February 2024, and whether Application A was installed on the devices and used in February 2024."[125]  In his reply, Defendant relies on the recently issued opinion of *United States v. Holcomb*, an opinion which the parties acknowledged at oral argument had since been withdrawn by the Ninth Circuit.[126]  In that case, law enforcement was investigating an alleged sexual assault.  They obtained a warrant that authorized them to seize, but not to search, Holcomb's cellphone and computer.  The defendant claimed that a surveillance video on his computer would prove that the sexual encounter was consensual and he initially consented to the search of the computer seized at his residence.  However, Holcomb subsequently withdrew his consent before law enforcement had reviewed the video.  Law enforcement then obtained a search warrant to search the computer.  Among other provisions, the warrant authorized a search of the computer to seize evidence of "Files[,] artifacts or information including but not limited to[] documents, photographs, videos, e-mails, social media posts, chats and internet cache that

---

[125] Docket 54 (SEALED) at 43.

[126] Docket 80-1 (SEALED) at 11 (quoting *United States v. Holcomb*, 132 F.4th 1118, 1135 (9th Cir. 2025), *opinion withdrawn*, 2025 U.S. App. LEXIS 25437 (Sept. 24, 2025)).  The Court considers *United States v. Holcomb* to the extent that the opinion is persuasive, recognizing that the withdrawn opinion is not precedent.  *Reyes-Corado v. Garland*, 76 F.4th 1256, 1260-61 n.4 (9th Cir. 2023) (noting that a prior opinion that had been withdrawn "reached the same result we reach today" and, "[a]lthough the opinion was withdrawn upon the grant of panel rehearing and is thus not binding, we find its reasoning persuasive").

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 30 of 39

would show dominion and control for the devices."[127]  The provision contained no temporal limitations.  The search warrant also authorized the search and seizure of other evidence from the computer; those other provisions contained temporal limitations, limiting the search from when the defendant and the victim began communicating and from the day the assault allegedly occurred to the date of the warrant.[128]

The defendant in *Holcomb* only challenged the "dominion and control" provision of the warrant, contending that it was overbroad and lacked particularity.[129]  The panel agreed.[130]  Unlike the other provisions in the warrant— which were limited to evidence of communications between the defendant and alleged victim, surveillance video depicting the defendant and victim, and location data or computer search history beginning on the day of the alleged assault—the dominion and control provision did not specify a particular type of evidence; nor did it contain a temporal limitation.[131]  As such, the panel held that the provision was overbroad because, as the government conceded, the search warrant "authoriz[ed] the state to open and examine any file from any time period, including files that long predated the alleged assault," and "the affidavit underlying the

---

[127] *Holcomb*, 132 F.4th at 1123-24.

[128] *Id.*

[129] *Id.* at 1126-27.

[130] *Id.* at 1128.

[131] *Id.*

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 31 of 39

second warrant set forth no grounds to find probable cause to conduct a search—much less a limitless search—for dominion and control evidence."[132]

The panel also held that the dominion and control provision was insufficiently particular:

> Because Holcomb's computer contained thousands of files and because the dominion and control provision did not contain any temporal limitations, the examiner simply exercised his unfettered discretion in determining which files to scroll past and which files to open and examine pursuant to that provision. On that basis alone, we can conclude that the dominion and control provision was insufficiently particular.[133]

Further, the panel held that it would have been reasonable for the government to provide a more specific description of the items to be searched because the government "was well aware of the relevant time period, as it was investigating a single incident that took place in a particular location on a specific date. Every provision of the second warrant except for the dominion and control provision therefore was limited to the period surrounding that incident."[134]

As discussed above, this Court found that it was reasonable for the Government in this case to seize all computers and media storage devices because the Government could not reasonably specify which device(s) had been used to access Group X and the link. As to the breadth of the search of the

---

[132] *Id.*

[133] *Id.* at 1129.

[134] *Id.* (citing *United States v. Banks*, 556 F.3d 967, 973 (9th Cir. 2009)).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 32 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 32 of 39

electronic devices, while a close question, the Court does find substantial evidence in the record supports the magistrate's decision as to the scope of the warrant. Without more, the click of the link on February 19, 2024 is akin to the single incident at issue in *Holcomb*. But more was provided to the magistrate judge here, sufficient to distinguish *Holcomb*. The affidavit shows that the user of the IP address displayed characteristics common to individuals who have a sexual interest in children when the user clicked on a link with language suggestive of the sexual abuse of children in a group that appears to be primarily dedicated to child pornography and the sexual abuse of children. The affidavit also explains that ███

████████████████████████████████████████████

████████████████████████████████████[35] The affidavit provides two graphic examples of CSAM that were "openly visible" in Group X.[136] Based on that openly visible content, the affidavit concludes ████████████████

████████████████████████████████████████████

████████████[37] Further, as noted above, the affidavit explained that computer users may employ tactics to conceal data within the computer, and that "a computer user's Internet activities generally leave traces or 'footprints' in the web cache and history files of the browser used" with "[s]uch information . . . maintained

---

[135] Docket 73-1 (SEALED) at ¶ 19 (Elizter Aff.).

[136] Docket 73-1 (SEALED) at ¶¶ 20-21 (Elizter Aff.).

[137] Docket 73-1 (SEALED) at ¶ 21 (Elizter Aff.).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 33 of 39
Case 3:24-cr-00091-SLG-KFR   Document 94 *SEALED*   Filed 12/29/25   Page 33 of 39

indefinitely until overwritten by other data."[138]  As such, the Court finds that the search warrant's authorization to search the electronic devices was "no broader than the probable cause on which it is based."[139]  For the foregoing reasons, the motion to suppress based on overbreadth is denied.

## II.     Detention and Questioning

Defendant maintains that when he was transported to the CID office, he was effectively under arrest, and that his "custodial interrogation" and detention were not justified.[140]  In response, the Government first suggests that Defendant went to the CID office voluntarily.  But the Court agrees with Defendant that the record does not establish that Defendant traveled to the CID office voluntarily.[141]  Without an evidentiary hearing, the Court cannot ascertain whether Defendant voluntarily accompanied the agents to the CID office, and the Government did not request such a hearing.

The Government also contends that Defendant was permissibly detained pursuant to *Michigan v. Summers* and *Muehler v. Mena* while the officers completed the search of Defendant's residence because Defendant was an

---

[138] Docket 73-1 (SEALED) at ¶¶ 29(h), 35 (Elizter Aff.).

[139] *Weber*, 923 F.2d at 1342.

[140] Docket 54 (SEALED) at 46-47.

[141] *See* Docket 65-6 (SEALED) (recounting that Defendant was "escorted from the premises by [another agent] and SA Elizter.  [Defendant] was transported by the WEER Resident Unit office and placed in an interview room."); Docket 65-4 (SEALED) ("Herrera placed the dogs in their kennels before being escorted to the CID office for an interview.").

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 34 of 39
Case 3:24-cr-00091-SLG-KFR     Document 94 *SEALED*     Filed 12/29/25     Page 34 of 39

occupant of the residence at the time the search warrant was being executed.[142] However, in both *Michigan* and *Muehler* officers detained the occupant of the residence at the residence itself; they did not transport the occupant to another location.[143] And in *Michigan*, the Supreme Court reasoned that the detention was reasonable in part because detention of a resident at his home was "not likely to be exploited by the officer or unduly prolonged in order to gain more information, because the information the officers seek normally will be obtained through the search and not through the detention."[144] Here, in contrast, Defendant was transported to the CID office where he was extensively questioned by two agents. The Court therefore finds *Michigan* and *Muehler* inapplicable.

The Government also maintains that Defendant's detention was permissible so as to allow law enforcement to "execute the warrant authorizing the search of his person."[145] But the Government does not explain why transporting Defendant to the CID office was required to effectuate the search, as they could have quickly and easily searched Defendant at his residence.

Lastly, the Government contends that Defendant's detention was a lawful investigative detention under *Terry v. Ohio* because the officers had reasonable

---

[142] Docket 72-1 (SEALED) at 42 (first citing *Michigan v. Summers*, 452 U.S. 692 (1981); and then citing *Muehler v. Mena*, 544 U.S. 93 (2005)).

[143] *Summers*, 452 U.S. at 693 & n.1; *Muehler*, 544 U.S. at 96.

[144] *Summers*, 452 U.S. at 701, 705.

[145] Docket 72-1 (SEALED) at 42.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 35 of 39

suspicion that Defendant committed a crime.[146]  In the Government's view, the facts as alleged in Agent Elizter's affidavit gave rise to reasonable suspicion that Defendant was "involved in criminal activity."[147]  And, even if Defendant's detention is effectively an arrest, the Government contends that probable cause supported Defendant's arrest.[148]

To determine "whether and when an investigatory stop becomes an arrest," courts evaluate "[t]he totality of the circumstances."[149]  "In looking at the totality of the circumstances, [courts] examine two main components of the detention.  First is 'the intrusiveness of the stop, i.e., the aggressiveness of the police methods and how much the plaintiff's liberty was restricted.'"[150]  Courts "'review the situation from the perspective of the person seized,' assessing whether 'a reasonable innocent person in these circumstances would . . . have felt free to leave after brief questioning.'"[151]  Second, courts evaluate "'the justification for the use of such tactics, i.e., whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken.'"[152]

---

[146] Docket 72-1 (SEALED) at 42.

[147] Docket 72-1 (SEALED) at 43.

[148] Docket 72-1 (SEALED) at 44.

[149] *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014).

[150] *Id.* (quoting *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996)).

[151] *Id.* (quoting *United States v. Delgadillo-Velasquez*, 856 F.2d 1292, 1295-96 (9th Cir. 1988)).

[152] *Id.* (quoting *Lambert*, 98 F.3d at 1185).

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 36 of 39

The Court finds that, in reviewing the totality of the circumstances, Defendant was arrested when he was transported from his home by agents to the CID office. While there is nothing in the record to suggest that the agents were aggressive in any way, Defendant's liberty was severely restricted. He was physically escorted from his home to the CID office. While the agents told Defendant that he was not under arrest and the door was unlocked, they also indicated that if Defendant wished to use the restroom, that could be "arrange[d]" and Defendant was seated such that two agents were between him and the door.[153] And when Defendant inquired about his job, the agents said "We will take care of that."[154] A reasonable person would not have felt free to leave, particularly after being told he was being detained and was Mirandized.[155] Further, there was little justification for the officers to transport Defendant to the CID office. The search warrant was to find evidence of CSAM, not on probable cause of any weapons-related charge or violent offense. And there is no indication that Defendant was considered to be dangerous by law enforcement. Therefore, the Court finds that Defendant was arrested when he was transported to the CID office.

Because Defendant was arrested when he was escorted by agents to the CID office, the Court must determine whether his arrest was supported by probable

[153] Docket 65-2 (SEALED) at 15-16.

[154] Docket 65-2 (SEALED) at 15-16.

[155] Docket 65-2 (SEALED) at 1, 15-16, 21, 24.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 37 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 37 of 39

cause. The Court finds that it was. The affidavit established that Agent Elizter knew that someone using an IP address registered to Defendant clicked a link █████ ███████████████████████████████████████████████. The name of the link also suggested that it could lead to CSAM. There are only two adults in Defendant's household. Further, Agent Elizter told Defendant that "We didn't throw a dart at a map and decide today is Seth's day, so, we're not here on accident. We already pretty much have it figured out by the time we even show up."[156] The facts known to Agent Elizter and reasonable inferences therefrom support probable cause that Defendant had engaged in criminal activity. Because Defendant's arrest was supported by probable cause, the statements made during the interview need not be suppressed.

## CONCLUSION

In light of the foregoing, Defendant's Motion to Suppress at Docket 54 is DENIED.

IT IS FURTHER ORDERED that the parties shall file a joint proposed redacted version of this order for filing on the public docket **within seven days of the date of this order**. The Court further sets a Trial Scheduling Conference for **January 27, 2026, at 10:00 a.m.** in Anchorage Courtroom 2 before Judge Sharon L. Gleason.

---

[156] Docket 65-2 (SEALED) at 20.

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 38 of 39

DATED this 29th day of December, 2025, at Anchorage, Alaska.

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

Case No. 3:24-cr-00091-SLG, *United States v. Herrera*
Sealed Order on Motion to Suppress
Page 39 of 39
Case 3:24-cr-00091-SLG-KFR    Document 94 *SEALED*    Filed 12/29/25    Page 39 of 39